**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| JEFFERSON ALEJANDRO DIAZ HERNANDEZ,<br><br>Petitioner,<br><br>vs.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondent. | No. C26-4059-LTS<br><br>**MEMORDANDUM OPINION AND ORDER** |

## *I. INTRODUCTION*

This case is before me on Jefferson Alejandro Diaz Hernandez's pro se petition (Doc. 1) and supplemental petition (Doc. 10) for a writ of habeas corpus under 28 U.S.C. § 2241. Diaz Hernandez is an alien who has been held in custody since December 2, 2025. *See* Doc. 19-1 at 3 ¶¶ 13-15. On February 6, 2026, an immigration judge ordered his removal to Venezuela but granted his request for withholding of removal. Doc. 19-6 at 8. Diaz Hernandez waived his right to appeal (Doc. 19-7 at 4), but the Government appealed the order withholding removal. Doc. 19-8 at 1-9. The parties disagree on the statutory framework of his detention. The Government asserts that because it has appealed the order withholding removal, there is no final order of removal and Diaz Hernandez is therefore detained pursuant to 8 U.S.C. § 1225(b)(2). Docs. 22, 25. Diaz Hernandez contends that because he did not appeal, he is detained pursuant to 8 U.S.C. § 1231. Docs. 20, 26.

In an initial review order (Doc. 3), I appointed the Federal Public Defender to represent Diaz Hernandez and directed the Government to respond to his petition. *Id.* at 4. The Government responded and included documents from his February 6, 2026,

removal proceedings. Docs. 16, 19-5, 19-6. Diaz Hernandez replied (Doc. 20), arguing that these documents showed that he was detained under 8 U.S.C. § 1231. Because of this new information, I ordered the Government to respond to this issue, which it did (Doc. 22). I then ordered a second round of supplemental briefing regarding the outcome if Diaz Hernandez is being detained pursuant to 8 U.S.C. § 1231. Both parties have filed briefs (Docs. 25, 26) on that issue. Oral argument is not necessary. *See* LR 7(c).

## *II. BACKGROUND*

Diaz Hernandez is a Venezuelan national who arrived in the United States in December 2022, "without inspection at an unknown location." Doc. 19-1 at 3 ¶¶ 11-12. On November 19, 2024, the Government granted Diaz Hernandez temporary protected status and work authorization, which expired on April 2, 2025. Doc. 10-1 at 1. On December 2, 2025, immigration officers stopped Diaz Hernandez's vehicle in Minnesota. Doc. 19-1 at 3 ¶ 13. After confirming that he was in the United States illegally, officers arrested him and issued him a Notice to Appear in removal proceedings. *Id.* Later that day, officials transported him to the Woodbury County Jail in Sioux City, Iowa, where he remains detained. *Id.* ¶¶ 14, 20.

On December 17, 2025, an immigration judge denied Diaz Hernandez's request to set bond, finding that he was subject to mandatory detention as an applicant for admission. Docs. 19-4, 19-5. On December 31, 2025, Diaz Hernandez applied for asylum. Doc. 19-6 at 3. On February 6, 2026, the immigration judge denied Diaz Hernandez's asylum request. *Id.* at 8. The immigration judge ordered Diaz Hernandez removed but granted his request for withholding of removal. *Id.* Diaz Hernandez waived his right to appeal the ruling. Doc. 19-7 at 4. The Government has appealed the withholding of removal but not the removal order. Doc. 19-8 at 2-9.

## *III. STANDARD OF REVIEW*

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). For relief, a petitioner must prove by a preponderance of the evidence that his detention is unlawful. *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025).

## *IV. ANALYSIS*

### *A. Is Diaz Hernandez Detained Under 8 U.S.C. § 1231?*

In both his pro se petition and supplemental petition, Diaz Hernandez argued that his continued detention violates his right to due process. Doc. 1-1 at 6; Doc. 10 at 5. The Government's reply (Doc. 16) included the immigration judge's oral and written orders (Docs. 19-6, 19-7), in which the judge ordered Diaz Hernandez removed to Venezuela but withheld his removal. These orders show that Diaz Hernandez waived his right to appeal either decision. Doc. 19-7 at 4. Incorporating this new information, Diaz Hernandez argues that because his order of removal became final when he waived his right to appeal, he is now detained under 8 U.S.C. § 1231. Doc. 20 at 1-2.

Different statutory schemes govern an alien's detention. Section 1225(b)(1) authorizes the summary removal of arriving aliens who either do not intend to apply for asylum or were not found to have a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i)–(ii), (B)(iii). Section 1225(b)(2) applies to all "applicants for admission" who are "seeking admission," with certain exceptions inapplicable here, and mandates the alien's detention while removal proceedings are ongoing. *Id.* § 1225(b)(2)(A). Section 1231 pertains to aliens already ordered removed, beginning on the latest of:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). "The statutory basis for detaining" an alien changes "from 8 U.S.C. § 1225 to 8 U.S.C. § 1231 when he receive[s] a final order of removal." *Mohammed S. v. Tritten*, No. 20-CV-793, 2020 WL 2750836, at *7 (D. Minn. Apr. 28, 2020), *report and recommendation adopted*, No. 20-CV-783, 2020 WL 2750109 (D. Minn. May 27, 2020). But determining when an order of removal is final involves an interplay between statutory[1] and regulatory[2] frameworks that often lack a clearcut answer. *See Gilo O.G. v. Barr*, No. 19-CV-1339, 2019 WL 5057544, at *2-7 (D. Minn. Aug. 28, 2019).

The Supreme Court has stated:

> Although that phrase [administratively final] is not defined in the statute, its meaning is clear. By using the word "administratively," Congress focused our attention on the *agency's* review proceedings, separate and apart from any judicial review proceedings that may occur in a court.

*Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) (emphasis in original). In this case, the Government has appealed the order withholding removal but neither party has appealed the actual order of removal. "In other words, there is nothing left for the

---

[1] An order of deportation "shall become final upon the earlier of[] (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the *alien* is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(A)-(B) (emphasis added).

[2] *Compare* 8 C.F.R. § 1003.39 ("[T]he decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first.") *with* 8 C.F.R. § 1241.1(b) (stating that an order of removal becomes final "[u]pon waiver of appeal by the [alien]").

[Government] to do with respect to the removal order other than to execute it. Thus, respondents' orders are administratively final."[3] *Guzman Chavez*, 594 U.S. at 535.

The immigration judge's order allows the Government to remove Diaz Hernandez to any country other than Venezuela. Thus, his order of removal became final on February 6, 2026, and his detention is governed by § 1231.

### *B. Detention Under 8 U.S.C. § 1231*

Section 1231 governs the detention and removal of aliens ordered removed. After an order of removal, the Government must, with certain exceptions, remove the alien within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). The Government must detain aliens during the removal period. *Id.* § 1231(a)(2)(A). After the removal period expires, the Government may continue to detain the alien or release him under supervision. *Id.* § 1231(a)(3), (6); *Guzman Chavez*, 594 U.S. at 546 ("In addition to setting out a 90-day removal period, § 1231 expressly authorizes [the Government] to release under supervision or continue the detention of aliens if removal cannot be effectuated within the 90 days."). Diaz Hernandez's removal period began on February 6, 2026, when his order of removal became administratively final, and ended 90 days later, on May 7, 2026. *See* 8 U.S.C. § 1231(a)(1)(B).

There are limits to the Government's ability to detain aliens after the removal period. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court considered whether § 1231 allows the Government "to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." *Id.* at 682 (emphasis omitted). The Court held:

---

[3] The Government points to *Bartu v. Bondi*, No. 25-CV-3198, 2025 WL 3640930 (D. Minn. Dec. 16, 2025). Doc. 22 at 2-3. *Bartu* is factually distinct, as the petitioner appealed the denial of a grant of withholding while Diaz Hernandez has not appealed any issue regarding his removal. In any event, and notwithstanding the analysis in *Bartu*, I find that *Johnson* compels a finding that Diaz Hernandez is subject to a final order of removal.

> We do have reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. This same framework applies to inadmissible aliens. *Clark v. Martinez*, 543 U.S. 371, 386 (2005) ("Since the Government has suggested no reason why the period of time reasonably necessary to effect removal is longer for an inadmissible alien, the 6–month presumptive detention period we prescribed in *Zadvydas* applies."); s*ee also Herdem v. Lyons*, 26-CV-3158, 2026 WL 2234435, at *8 (D. Neb. Aug. 4, 2026) ("*Clark* establishes that Herdem's claims for habeas relief based on *Zadvydas* are legally cognizable even though he was ordered removed as an inadmissible alien.").

The Government argues that I should dismiss Diaz Henandez's petition because his *Zadvydas* claim is not ripe. Doc. 25 at 2. Diaz Hernandez's order of removal became final on February 6, 2026, and he filed this action less than six months later, in June 2026. Doc. 1. In support, the Government cites *Gilo O.G.* Doc. 25 at 2. In that case, at the time the report and recommendation was filed, the petitioner had been subject to a final order of removal for more than six months. 2019 WL 5057544, at *6. However, less than six months had passed when he filed his petition. *Id.*

The court determined that the case was constitutionally ripe but concluded that prudential concerns rendered it unripe. *Id.* The court noted that judges in the District of Minnesota, "citing the Eleventh Circuit, have found habeas petitions bringing *Zadvydas* claims unripe when . . . they were filed before the presumptively reasonable six-month

period expired." *Id.* (footnote omitted). The court further noted that no Eighth Circuit case had addressed the issue. *Id.* n.8. The court found that the record and the briefing by the parties were insufficient to determine the likelihood that the Government would remove the petitioner in the reasonably foreseeable future. *Id.* at *7. Thus, the court dismissed the petition without prejudice. *Id.*

"A habeas petition filed before six months of detention has passed is not procedurally barred as premature—'nothing in *Zadvydas* precludes a challenge to detention before the presumptive[ ] . . . period has elapsed.'"[4] *Martinez Rico v. U.S. Immigr. & Customs Enf't*, No. CV 25-00990, 2026 WL 2069779, at *3 (M.D. La. July 16, 2026) (quoting *Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779 (M.D. La. 2026) (alterations in original). Diaz Hernandez contends dismissing his petition as premature "would serve no practical purpose as [he] would simply need to refile an identical petition seeking the same relief." Doc. 26 at 3. Unlike the situation in *Gilo O.G.*, the parties in this case have briefed the issue. For that reason, and because the record is sufficient, I will not dismiss the case on ripeness grounds and will consider the merits of Diaz Hernandez's *Zadvydas* claim.

Diaz Hernandez has shown that there is not a significant likelihood of removal in the reasonably foreseeable future. Specifically, "he has shown that he cannot be removed to his country of origin based on the grant of withholding of removal to Venezuela, that he is not a citizen of another country, and that the government has not properly identified a third country that would accept him."[5] *Torres v. Blanche*, No. 26-CV-00637, 2026

---

[4] Courts have considered petitions filed before the six-month period. *See, e.g.*, *Torres v. Blanche*, No. 2:26-CV-00637, 2026 WL 2163550, at *5 (D. Nev. July 27, 2026) (analyzing petition filed less than six months after removal order became final); *Ochoa v. Wolford*, No. 3:26-CV-00698, 2026 WL 2085989, at *3 (W.D. Pa. July 20, 2026) (same).

[5] If the Government prevails on its appeal, it is unclear whether Venezuela is accepting deportees. During an August 21, 2026, hearing in the Southern District of Texas, the Government stated "that Venezuela is not accepting deportations at this time." *Galarraga v. Frink*, No. 4:26-CV-05801, 2026 WL 2479765, at *3 (S.D. Tex. Aug. 24, 2026)

WL 2163550, at *6 (D. Nev. July 27, 2026); *Durand-Crespo v. Warden, Fla. Soft Sided Facility*, No. 26-CV-01966, 2026 WL 2162770, at *1 (M.D. Fla. July 28, 2026) (finding that petitioner had shown that there was no significant likelihood of removal in the reasonably foreseeable future when "the government [could not] remove him to Venezuela, and it ha[d] taken no steps to remove him to another country"); *Ochoa v. Wolford*, No. 26-CV-00698, 2026 WL 2085989, at *3 (W.D. Pa. July 20, 2026) ("Given the passage of more than six months, the absence of any documented acceptance by Mexico, and the lack of any concrete removal arrangements, the Court finds that Petitioner has provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future.").

The Government has failed to rebut this showing. Therefore, Diaz Hernandez' continued detention is unreasonable under *Zadvydas*.

## *V. CONCLUSION*

For the reasons set forth herein, petitioner Jefferson Alejandro Diaz Hernandez's petition (Doc. 1) for habeas corpus is **granted**, as follows:

1. Respondents are **ordered** to release Diaz Henrnadez within **10 days** of the date of this order.

2. Respondents must release Diaz Hernandez at a public place within the District of Minnesota and give him the opportunity to inform a friend or family member of the timing and location of his release.

3. Respondents must return all personal property to Diaz Hernandez upon release.

4. Respondents must inform the Court of the status of Diaz Hernandez's release within **21 days** of the date of this order.

**IT IS SO ORDERED** this 3rd day of September, 2026.

Leonard T. Strand
United States District Judge